Jones, J.,
 

 dissenting. The salient and controlling facts in this case are not disputed. Walsh & McDaniel entered into a contract with the director of highways in the sum of $47,391.95, for the improvement of a state highway. For the purpose of financing this improvement the contractors, who are customers of the Huntington National Bank, entered into an arrangement with the bank, on September 17, 1923, whereby loans were obtained from the bank, including the loan in question. On the same day the contractors assigned all moneys then or thereafter to become due to the bank as collateral security, and authorized the bank to indorse and receive all vouchers and warrants for future payment of moneys under the contract. From time to time vouchers were issued to the contractors upon estimates made by the state, all
 
 *334
 
 of which were mailed to the contractors in care of the bank.
 

 Notice of the pledge and assignment, as here indicated, was, on the 17th day of September, 1923, given by the bank to the state auditor and the director of highways of the state. Under the arrangement so made, on October 20, 1923, the contractors borrowed $800 from the bank, payable 15 days after date, the proceeds of which “were used by Walsh & McDaniel [contractors] in the payment of labor performed and materials used, prior to November 2, 1923, in connection with the improvement contract.” On November 10, 1923, the state issued a voucher to the contractors covering an estimate dated November 2, 1923, which was not transmitted to the bank, “because of the claim made thereto by the Southern Surety Company.” Thirty days after the bank loan became due, and 9 days after the issuance of the voucher in controversy, the contractors notified the director of highways that they were unable to complete the contract, and the latter called upon the contractors ’ surety to complete the improvement. The last voucher, dated November 10, 1923, was for $1,506.10, and was more than the amount due the bank.
 

 It is important to note that the state makes no claim to the funds represented by this voucher, but has entered the case by way of interpleader, holding the same solely for the determination of the equitable priorities between the bank and the surety.
 

 The claim of the surety company is two-fold: (1) That it is subrpgated to all the rights of the state and entitled to all the remedies that the state
 
 *335
 
 might have in the interpleaded fund; (2) that, under the facts developed, the equities of the surety company are equal to or prior to the equities of the bank.
 

 Were the state claiming a fund in its hands, consisting of a reserved percentage, for the purpose of completing the contract, under a stipulation therefor, we do not doubt that the state would have that right as against the bank who loaned the money, even though the money may have been used for the purpose of paying for materials and labor that entered into the improvement. But the state is making no such claim in the instant case. It has brought the fund into court by way of inter-pleader.- It is merely a stakeholder, asking the court to determine where the equities between the interested parties lie, and to whom the fund shall be paid. When the voucher of November 10, 1923, was issued for the sum of $1,506.10, the $800 borrowed from the bank was overdue, and the voucher would have been forwarded to the bank in the usual course had it not been for the claim of the surety company. If the claim be made that the surety company is subrogated to the rights of the state, a complete answer thereto is the fact that, not only does the state make no claim to the fund under any contractual provision, but, on the contrary, would have paid it to the bank under its collateral pledge and assignment, of which the state had due notice; nor, in view of its action, as hereinafter indicated, could the state in good conscience assert this right against the bank. The amount paid by the bank, and used for the payment of material and labor, was to that extent beneficial to
 
 *336
 
 the surety company. Had the loaner, instead of advancing the sum of $800 for the payment of materials, actually furnished the materials, there could be no doubt that it would have a lienable claim for that amount.
 

 Counsel on both sides of the case have cited numerous authorities in support of their respective contentions. However, none of the cases cited presents such equitable considerations as appear here that seem to justify, as against the surety, the claim of priority on the part of the bank.
 

 We do not have here a case like some that have been cited by plaintiff, where a city or state, under a similar assignment, was endeavoring to claim a fund especially reserved for the purpose of completing an improvement after the contractor’s default. The bank is simply attempting, under its assignment, to claim a fund earned by the contractors under estimates of the engineer, and payable to the contractors under the contract, and for which sum a voucher had been approved by the state. When this voucher was issued, the sum named therein had been appropriated to the contractors, in pursuance of contract, before its abandonment, and before the surety- company asserted any claim thereto.
 
 Bates
 
 v.
 
 Salt Springs Natl. Bank,
 
 157 N. Y., 322, 51 N. E., 1033;
 
 Dowling
 
 v.
 
 City of Seattle,
 
 22 Wash., 592, 61 P., 709.
 

 Had the bank in the instant case been a general creditor of the contractor, and had the money loaned not been traced into the improvement, the claim of the surety company might be sustained under equitable principles.
 
 Maryland Casualty Co.
 
 v.
 
 Wash. Natl. Bank,
 
 92 Wash., 497, 159 P., 689;
 
 *337
 

 Henningsen
 
 v.
 
 U. S. Fidelity & Guaranty Co. of Baltimore,
 
 208 U. S., 404, 28 S. Ct., 389, 52 L. Ed., 547.
 

 As we have said, a great many authorities have' been cited by counsel upon both sides, but necessarily the determination of each case requires the application of the principles of equity to each individual case as the facts are developed. “Subrogation or equitable assignment is based on principles of natural justice and essential fairness without regard to form—its object being the prevention of injustice.”
 
 Fidelity & Deposit Co. of Maryland
 
 v.
 
 City of Stafford,
 
 93 Kan., 539, 144 P., 852.
 

 There is a line of cases that holds that where a contract between the contractor and the owner of the improvement stipulates that payments shall be made to the contractor from time to time, on earned estimates, and provides also that a balance consisting of a certain percentage shall be retained by the owner for the completion of the improvement on default of the contractor, then the surety, being subrogated to the rights of the owner, steps into the shoes of the latter, and is entitled to be subrogated only to the percentage retained for the completion of the improvement under the terms of such contract. Among other cases supporting that view are the following cited by counsel for plaintiff:
 
 Prairie State Bank
 
 v.
 
 United States,
 
 164 U. S., 227, 17 S. Ct., 142, 41 L. Ed., 412;
 
 Wasco County
 
 v.
 
 New England Equitable Ins. Co., 88
 
 Or., 465, 172 P., 126, L. R. A., 1918D, 732, Ann. Cas., 1918E, 656;
 
 First Natl. Bank of Seattle
 
 v.
 
 City
 
 
 *338
 

 Trust, Safe Deposit & Surety Co.,
 
 114 F., 529, 52 C. C. A., 313.
 

 In
 
 Bank, of Seattle
 
 v.
 
 City Trust, S. D. & S. Co., supra,
 
 two of the members of the Circuit Court of Appeals held that the surety’s right of subrogation extended not only to the reserved percentage, but to the entire fund. However, it appears on page 534 that Mr. Justice McKenna, sitting on that bench, dissented, holding that, on abandonment of the contract, the right of subrogation extended only to the percentage reserved under the contract; that the 70 per cent, earned “was a vested substantive right of the contractors, and passed by their assignment to the bank.” The justice then adds: ‘ ‘ This view is sustained, in my opinion, not opposed, by the case of
 
 Prairie State Nat. Bank
 
 v.
 
 U. S.,
 
 164 U. S., 227, 17 S. Ct., 142, 41 L. Ed., 412.”
 

 Many of the cited cases are dissimilar to the case at bar. In
 
 Henningsen
 
 v.
 
 U. S. Fidelity & Guaranty Co.,
 
 208 U. S., 404, 405, 408, 28 S. Ct., 389, 52 L. Ed., 547, it appears from the statement of the case, and from the brief of counsel for the surety company, that, not only did the bank advance its money as a general loan to the contractor, but there was no proof that the proceeds of the loan were used in the improvement. It does not appear from this record what the contract was between the state and the contractor, or whether the state was authorized thereby to reserve any percentage for the completion of the improvement upon default. The record only discloses that the contractor was to be paid certain amounts, which were approved by the engineers’
 
 *339
 
 estimates. Certainly the right of the surety company cannot rise higher than that of the state under the situation here presented. As stated in the opinion of Mr. Justice McKenna, above quoted, under this contract the contractors acquired a “vested substantive right,” which “passed by * * * assignment to the bank.”
 

 Since we aré dealing with equities, there is an additional reason why in this case,'assuming that the surety can be subrogated to the right of the state, the state ought not, in good conscience, deny priority to the bank. Before the loan had been made by the bank, the latter forwarded to the director of highways the original assignment made by the contractors, and also sent a copy thereof to the state auditor. In its letter to each of them the bank said:
 

 “If for any reason this assignment could not be accepted and recognized, please notify us promptly.”
 

 The record does not disclose that either the director or the state auditor responded to this letter, but, to the contrary, permitted the loan to be made, and thereafter transmitted to the Huntington National Bank the vouchers issued to the contractors under the contract made by them with the state. Certainly the surety company cannot now advance a claim which, under the circumstances developed in this case, the state itself cannot justifiably advance.
 

 But, were we to concede that the authorities were at variance as to the application of the equitable principles under consideration, we think that the Supreme Court of this state has been
 
 *340
 
 fully committed to the equitable doctrine herein announced. In
 
 Maryland Casualty Co.
 
 v.
 
 Citizens’ Natl. Bank of
 
 Caldwell, 18 Ohio App., 193, while the facts are dissimilar from the instant case, the bank prevailed in the Court of Appeals, and a motion to certify the cause was denied by this court. In its opinion the Court of Appeals states :
 

 “There being no equitable lien upon the fund in favor of the casualty company, when the warrant for the final estimate was delivered to the cashier of the bank it [the bank] received same with the right to apply it upon the amount of money then due from the contractors,” etc.
 

 Another case, tried in the Court of Appeals of Stark' county, is
 
 Ætna Casualty & Surety Co.
 
 v.
 
 Harter Bank.
 
 In that case the Downs Company had contracted with the city of Akron to complete a sewer improvement for the sum of $171,291.57. Ten per cent, of the estimate of work done on the improvement was to be retained until the completion of the contract, when five per cent, thereof was to be paid. The other five per cent, was to be paid one year after the completion. The contractors gave bond with the HDtna Surety Company, containing the same terms as did the bond in the instant case. During the progress of the work the contractor assigned to the Harter Bank the 10 per cent, retained upon the estimate for work performed and materials furnished. After such assignment, the city officials, its auditor and director of public service, consented to the assignment. Afterwards persons filed attested accounts with the city for labor and materials furnished. Later these were withdrawn, and after withdrawal
 
 *341
 
 their claims were paid by the surety company. The city of Akron filed an interpleader in court asking a determination of the priorities of the fund in its hands. At that time there was in court for distribution, due from the city, the sum of $20,386.63, of which $17,129.16 comprised the retained percentage, and $3,257.47 was the amount due from the city under the contract over and above the 10 per cent, retained. The Harter Bank claimed a lien for the sum of $10,710.10 for money advanced to the contractor. The surety company, having, after the assignment, paid the claims of the labor and materialmen, who had previously filed attested accounts, but later withdrew them, in the amount of $9,570, claimed an equitable lien to the fund prior to that of the bank. However, the Court of Appeals held that, while materialmen might have claimed a lien at the time they filed their attested accounts, since they later withdrew those accounts, the surety, by later paying the claims, could not claim a lien by way of subrogation as against the bank. This court, on May 31, 1922, refused to entertain a motion to certify the case (Supreme Court No. 17458).
 

 We are utterly unable to see why a surety who has guaranteed against its principal’s default should avail itself of that default and recover as against a creditor who had in good faith loaned its money to pay for labor and materials furnished that surety’s principal.
 

 Day and Kinkade, JJ., concur in this dissenting opinion.